**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WALTER WILLIAMS, individually and on behalf of other persons similarly situated, | Case No. 1:24-cv-11683 |
| Plaintiff, | Honorable Jeffrey I. Cummings |
| v. | |
| PURE FREIGHT LINES LTD., an Illinois corporation, and MOTIVE TECHNOLOGIES, INC., a Delaware corporation, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT MOTIVE TECHNOLOGIES, INC.'S MOTION**
**TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION**
**COMPLAINT**

Justin O. Kay
Ambria D. Mahomes
**FAEGRE DRINKER BIDDLE & REATH LLP**
320 South Canal Street, Suite 3300
Chicago, Illinois 60606-5707
Telephone: 312-569-1000
Facsimile: 312-569-3000
justin.kay@faegredrinker.com
ambria.mahomes@faegredrinker.com

Anderson Tuggle
**FAEGRE DRINKER BIDDLE & REATH LLP**
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone: 612-766-7000
Facsimile: 612-766-1600
anderson.tuggle@faegredrinker.com

Paul A. Rosenthal
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
Telephone: 973-549-7000
Facsimile: 973-360-9831
paul.rosenthal@faegredrinker.com

*Counsel for Defendant Motive Technologies, Inc.*

i

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

I.     The Court Should Dismiss the Complaint For Failure To State a Claim. ......................... 3

    A.     Plaintiff's Claims Are Preempted by Federal Safety and Transportation
       Laws and Regulations. ............................................................................................ 4

         i.     Plaintiff's claims are expressly preempted by the FAAAA........................ 4

         ii.    Plaintiff's claims are also preempted as they conflict with FMCSA
              regulations. ................................................................................................. 8

    B.     Plaintiff Fails to Plead Facts that Plausibly Establish Collection of
       "Biometric" Data Capable of Identifying Plaintiff. ............................................... 9

    C.     Plaintiff Fails to Allege that Defendants "Collected" or "Stored" His
       Biometric Information ......................................................................................... 12

II.    At Minimum, The Court Should Preclude Plaintiff From Seeking Unauthorized
    and Excess Relief. ........................................................................................................... 13

    A.     Plaintiff Cannot Recover "Repeat Damages" Under BIPA. ................................. 14

         i.     The August 2024 amendment applies retroactively because the
              Legislature simply clarified existing law. ................................................. 14

         ii.    The August 2024 amendment is also retroactive because it effected
              only a procedural change to BIPA's remedies provision......................... 20

    B.     Plaintiff Cannot Seek Injunctive Relief Because He Does Not Allege Any
       Ongoing or Future Harm. ..................................................................................... 22

    C.     Plaintiff Cannot Represent a Class That Includes Non-Illinois Residents. .......... 23

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Aux Sable Liquid Prod. v. Murphy*,
526 F.3d 1028 (7th Cir. 2008) ....................................................................................8

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005) ...................................................................................23, 25

*Bailey & Asscs., Inc. v. Ill. Dep't of Emp. Sec.*,
638 N.W.2d 1204 (Ill. App. 1997) ......................................................................15, 19

*Brandl v. Superior Air-Ground Ambulance Serv., Inc.*,
2012 WL 7763427 (N.D. Ill. Dec. 7, 2012) .............................................................21

*Brown v. Budz*,
398 F.3d 904 (7th Cir. 2005) ...................................................................................13

*Campana v. Nuance Comms., Inc.*,
2024 WL 2809838 (N.D. Ill. Mar. 8, 2024) ............................................................23

*Carello v. Aurora Policemen Credit Union*,
930 F.3d 830 (7th Cir. 2019) .............................................................................22, 23

*Clarke v. Aveda Corp.*,
2023 WL 9119927 (N.D. Ill. Dec. 1, 2023) .............................................................11

*In re Clearview AI, Inc., Consumer Privacy Litig.*,
585 F. Supp. 3d 1111 (N.D. Ill. 2022) .....................................................................23

*Cothron v. White Castle Sys., Inc.*,
216 N.E.3d 918 (Ill. 2023) .........................................................................16, 17, 19

*Cothron v. White Castle Sys., Inc.*,
No. 1:19-cv-382, Dkt. 141 (N.D. Ill. Oct. 1, 2020) ....................................15, 17, 19

*Cothron v. White Castle System, Inc.*,
20 F.4th 1156 (7th Cir. 2021) ...........................................................................15, 16

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)...................................................................................................8

*Crumpton v. Octapharma Plasma, Inc.*,
513 F. Supp. 3d 1006 (N.D. Ill. 2021) .......................................................................4

*Cummings v. Premier Rehab Keller, PLLC*,
596 U.S. 212 (2022)..................................................................................................21

*Daichendt v. CVS Pharmacy, Inc.*,
2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) ........................................................................10

*Daly v. Glanbia Performance Nutrition, Inc.*,
2023 WL 5647232 (N.D. Ill. Aug. 31, 2023) ..................................................................24, 25

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013) ..............................................................................................................4, 5

*Dardeen v. Heartland Manor, Inc.*,
710 N.E.2d 827 (Ill. 1999) ................................................................................................21, 22

*First Mortgage Company v. Dina*,
2014 IL App (2d) 130567 ..........................................................................................1, 2, 15, 18

*Frank Bros. v. Wis. DOT*,
409 F.3d 880 (7th Cir. 2005) ....................................................................................................8

*Fryman v. Atlas Financial Holdings, Inc.*,
2022 WL 1136577 (N.D. Ill. Apr. 18, 2022) ...........................................................................3

*G.T. v. Samsung Elecs. Am. Inc.*,
--- F. Supp. 3d ---, 2024 WL 3520026 (N.D. Ill. July 24, 2024) ...........................................12

*Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc.*,
734 F.3d 296 (4th Cir. 2013) ....................................................................................................6

*Garland v. Cargill*,
602 U.S. 406 (2024) ................................................................................................................19

*GreenPoint Mortg. Funding, Inc. v. Poniewoznik*,
23 N.E.3d 525 (Ill. App. 2014) ..............................................................................................20

*Gregg v. Central Transport LLC*,
--- F. Supp. 3d ---, 2024 WL 4766297 (N.D. Ill. Nov. 13, 2024) ...................................*passim*

*J.A.G.P. v. Aerolineas Damojh, S.A. de C.V.*,
585 F. Supp. 3d 1092 (N.D. Ill. 2022) .....................................................................................4

*Jones v. Circuit Court of Cook Cty.*,
2021 WL 4459510 (N.D. Ill. Sept. 29, 2021) ........................................................................13

*K. Miller Constr. Co. v. McGinnis*,
938 N.E.2d 471 (Ill. 2010) ...............................................................................14, 15, 17, 19

*Kislov v. American Airlines, Inc.*,
2022 WL 846840 (N.D. Ill. Mar. 22, 2022) .........................................................................6, 7

*Kloss v. Acuant, Inc.*,
    462 F. Supp. 3d 873 (N.D. Ill. 2020) ............................................................12, 13

*Martell v. X Corp.*,
    2024 WL 3011353 (N.D. Ill. June 13, 2024) ...............................................10, 12

*McBride v. McLean County*,
    397 F. Supp. 3d 1198 (C.D. Ill. 2019) ..................................................................17

*Montana v. Wyoming*,
    563 U.S. 368 (2011)................................................................................................22

*Nationwide Freight Sys., Inc. v. Illinois Com. Comm'n*,
    784 F.3d 367 (7th Cir. 2015) ..................................................................................5

*Nelson v. Great Lakes Educ. Loan Servs.*,
    928 F.3d 639 (7th Cir. 2019) ..................................................................................4

*Perry v. Dep't of Fin. & Prof. Reg.*,
    106 N.E.3d 1016 (Ill. 2018)............................................................................20, 22

*Porgorzelska v. VanderCook College of Music*,
    2024 WL 1578715 (N.D. Ill. Apr. 11, 2024) ...............................................20, 21

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ..................................................................9

*Rowe v. New Hampshire Motor Transp. Ass'n*,
    552 U.S. 364 (2008)..................................................................................................5

*Rubin v. Marshall Field & Co.*,
    597 N.E.2d 688 (Ill. App. 1992) ........................................................15, 17, 19

*S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*,
    697 F.3d 544 (7th Cir. 2012) ..................................................................................5

*Schwartz v. Supply Network, Inc.*,
    2024 WL 4871408 (N.D. Ill. Nov. 22, 2024) ...............................................19, 22

*Simic v. City of Chicago*,
    851 F.3d 734 (7th Cir. 2017) ................................................................................22

*Sloan v. Anker Innovations Ltd.*,
    711 F. Supp. 3d 946 (N.D. Ill. 2024) ......................................................23, 24, 25

*Ussery v. Mercedes-Benz USA LLC*,
    2024 WL 4882856 (N.D. Cal. Nov. 25, 2024) .......................................................3

iii

*Wells Fargo Bank, N.A. v. Maka*,
    2017 IL App (1st) 153010 ....................................................................18, 19

*West Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*,
    183 N.E.3d 47 (Ill. 2021) ............................................................................9

*White v. Sunrise Healthcare Corp.*,
    692 N.E.2d 1363 (Ill. App. Ct. 1998) .....................................................21

*Williams v. JRN, Inc.*,
    2024 WL 2846481 (S.D. Ill. June 5, 2024).............................................23

*Williams v. State Farm Mut. Auto. Ins. Co.*,
    2023 WL 5748421 (N.D. Ill. Sept. 6, 2023) ...........................................22

*Ye v. GlobalTranz Enters.*,
    74 F.4th 453 (7th Cir. 2023) ......................................................................7

**Statutes, Rules & Regulations**

49 C.F.R. § 392.16 ...........................................................................................8

49 C.F.R. § 393.60(e) .......................................................................................9

205 ILCS 635/1-3(e) .......................................................................................18

740 ILCS 14/5 ..................................................................................................9

740 ILCS 14/10 ................................................................................................9

740 ILCS 14/15 ........................................................................................*passim*

740 ILCS 14/20 ........................................................................................*passim*

775 ILCS 60/10 ...............................................................................................21

49 U.S.C. § 31136(a) ........................................................................................8

Fed. R. Civ. P. 23(d)(1)(D) ............................................................................25

Defendant Motive Technologies, Inc. submits this brief in support of its 12(b)(6) Motion to Dismiss the Amended Class Action Complaint (hereafter, "Complaint" or "Compl.")[1] of Plaintiff Walter Williams alleging violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*.

## INTRODUCTION

This putative class action arises at the intersection of interstate trucking and Illinois privacy law. When Plaintiff worked as a driver for Defendant Pure Freight (an interstate freight carrier), Pure Freight used safety-enhancing dashboard camera technology provided by Defendant Motive. That technology is used to monitor driver behavior to ensure that drivers are operating safely and complying with federal regulations, *e.g.*, not using a cellphone.

Plaintiff sees things more nefariously: he claims that every time he drove a Pure Freight truck equipped with a Motive camera, Defendants violated his privacy rights under BIPA. Why? Because the safety camera allegedly "scanned" his "facial geometry" and thereby collected his "biometric" information without his advance consent. *See* 740 ILCS 14/15. Plaintiff now seeks up to $5,000 in statutory damages, per violation, on behalf of himself and two putative classes.

For two reasons, the Court should dismiss Plaintiff's Complaint. ***First***, because applying BIPA to interstate transportation businesses like Motive and Pure Freight materially interferes with federal safety and transportation laws and regulations, Plaintiff's BIPA claim is preempted. ***Second***, Plaintiff fails to state a BIPA claim because he does not plausibly allege that Defendants "collected" or "stored" "biometric information" capable of identifying *him* (like the statute requires) as opposed to providing alerts regarding his *behaviors*.

---

[1] All citations to the Complaint are to the Amended Class Action Complaint filed as Exhibit 2 to Motive's Notice of Removal. *See* ECF 1 at Ex. 2 (PageID #25-37).

Alternatively, if the Court does not dismiss the Complaint in its entirety, the Court should still dismiss insofar as Plaintiff seeks relief to which he is not entitled. ***First***, the Court should dismiss Plaintiff's attempt to recover damages for "every day" that he drove a Pure Freight truck equipped with a Motive camera because the Legislature's recent amendment to BIPA forecloses the theory that each day of use constitutes a separate violation. *See* 740 ILCS 14/20 (as amended Aug. 2, 2024). ***Second***, the Court should dismiss Plaintiff's request for injunctive relief because Plaintiff is a *former* Pure Freight driver, does not allege that he is a driver employed in Illinois, and alleges no risk of ongoing or future harm. ***Third***, the Court should dismiss Plaintiff's request that this putative class include non-Illinois residents because BIPA cannot be applied extraterritorially.

## BACKGROUND

Defendant Motive Technologies, Inc. is a California-based technology company whose "in-cabin monitoring systems" provide alerts to commercial motor vehicle drivers about dangerous driving behaviors. Compl. ¶¶ 18-23; ECF 1 ¶ 7. This technology exists to support and improve the safety of the nationwide transportation industry. Most notably for present purposes, Plaintiff alleges that Motive's systems use "inward facing cameras . . . to monitor . . . truck drivers . . . for any signs of unsafe driving or . . . improper behavior." Compl. ¶ 19. For example, Plaintiff alleges, Motive's cameras can "detect . . . whether" a driver is "distracted, using a cellphone, or even [] yawning." *Id*. ¶ 21.

Defendant Pure Freight Lines, Ltd. is an Illinois-based trucking company that has used Motive's technology in its vehicles. *Id*. ¶¶ 13, 24. Pure Freight is registered with the U.S.

Department of Transportation ("DOT") Safety and Fitness Electronic Records ("SAFER") System as an active, interstate carrier authorized to transport property (USDOT No. 2564216).[2]

Plaintiff Walter Williams is an Illinois resident who allegedly "worked as a truck driver for Pure Freight during 2023." Compl. ¶¶ 14, 26. He alleges that "the truck that [he] drove was equipped with a Motive camera" and that "[a]s soon as [he] would begin driving his truck, Motive's camera would begin to scan and analyze his facial biometrics to determine if he was engaged in any unsafe driving behavior." *Id*. ¶¶ 22, 26-29. He claims that Defendants collected his "biometric information," that he did not consent to this collection, and that this violated BIPA. *Id*.; *see* 740 ILCS 14/15(b). Plaintiff asserts that this BIPA violation occurred "every day that [he] drove a truck equipped with a Motive in-cabin monitoring system." Compl. ¶ 48.

Plaintiff seeks to represent a class of "all individuals who were employed as drivers in Illinois . . . who were subject to [Motive's] in-cabin monitoring system within the State of Illinois," as well as a "subclass" of "individuals who were employed as drivers for [Pure Freight] in Illinois[.]" *Id*. ¶ 36. Plaintiff purports to seek both "statutory damages"—up to "$5,000 for each . . . violation"—and unspecified "injunctive and equitable relief." *Id*., Prayer for Relief.

## ARGUMENT

### I.    The Court Should Dismiss the Complaint For Failure To State a Claim.

Plaintiff alleges a single count under BIPA. Compl. ¶¶ 44-55. He claims that Defendants' actions violated 740 ILCS 14/15(a) (requiring the "develop[ment]" of a "written" "retention"

---

[2]    *FMCSA, Safer Sys.*, https://safer.fmcsa.dot.gov/query.asp?searchtype=ANY&query_type =queryCarrierSnapshot&query_param=USDOT&original_query_param=NAME&query_string=2564216 &original_query_string=PURE%20FREIGHT%20LINES%20LTD (query USDOT No. 2564216). The Court can take judicial notice of Pure Freight's interstate operations because it is "information on a government website that is not subject to reasonable dispute." *Fryman v. Atlas Financial Holdings, Inc.*, 2022 WL 1136577, at *7-8 (N.D. Ill. Apr. 18, 2022); *see, e.g.*, *Ussery v. Mercedes-Benz USA LLC*, 2024 WL 4882856, at *2 n.2, *5 (N.D. Cal. Nov. 25, 2024) (taking judicial notice of information from DOT website).

"policy" for "biometric information") and 740 ILCS 14/15(b) (barring the "collect[ion]" of "biometric information" without certain disclosures and consent). *Id*. ¶ 50. Because Plaintiff's BIPA claim is preempted and implausible, the Court should dismiss it.

### A. Plaintiff's Claims Are Preempted by Federal Safety and Transportation Laws and Regulations.

Federal law is "the supreme Law of the Land" and "Judges in every State shall be bound thereby, any . . . Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. "Preemption, rooted in the Supremacy Clause, recognizes Congress's power to preempt or invalidate state laws through federal legislation." *Crumpton v. Octapharma Plasma, Inc.*, 513 F. Supp. 3d 1006, 1012-13 (N.D. Ill. 2021). Congress's purpose is the "ultimate touchstone" in every preemption case. *J.A.G.P. v. Aerolineas Damojh, S.A. de C.V.*, 585 F. Supp. 3d 1092, 1097 (N.D. Ill. 2022). Here, application of BIPA is not only expressly preempted by federal law—namely, the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c)(1)—but it is also impliedly preempted because it conflicts with safety regulations promulgated by the Federal Motor Carrier Safety Administration ("FMCSA").

### i. Plaintiff's claims are expressly preempted by the FAAAA.

"Express preemption applies when Congress clearly declares its intention to preempt state law." *Nelson v. Great Lakes Educ. Loan Servs.*, 928 F.3d 639, 646 (7th Cir. 2019). Congress declared that intent decades ago regarding the trucking industry: it started the deregulation of interstate trucking via the Motor Carrier Act of 1980 and "completed the deregulation 14 years thereafter, in 1994, by expressly preempting state trucking regulation" via the FAAAA. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256 (2013). Specifically, Congress recognized the need to guard against "state governance of" even "*intra*state transportation of property" which had become unreasonably burdensome to "free trade, interstate

commerce, and American consumers." *Id.* at 256 (emphasis added). Congress thus enacted the FAAAA to prevent "a State's direct substitution of its own governmental commands for 'competitive market forces' in determining (to a significant degree) the services that motor carriers will provide." *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 372 (2008). By enacting the FAAAA, Congress made clear that the trucking industry ought to be optimized by the "rigors of the market" despite any state's desire to intervene, with the exception of where Congress chooses to act. *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544, 557 (7th Cir. 2012).

The FAAAA therefore expressly prohibits a state from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). And the Seventh Circuit broadly applies the phrase "related to": "[t]he universe of state regulatory efforts preempted by the FAAAA thus includes laws or actions having some type of connection with or reference to a carrier's rates, routes, or services, *whether direct or indirect*." *Nationwide Freight Sys., Inc. v. Illinois Com. Comm'n*, 784 F.3d 367, 373 (7th Cir. 2015) (emphasis added). Thus, a state law is preempted if it "relates to" motor carrier rates, routes, or services "*either* [a] by expressly referring to them *or* [b] by having a significant economic effect upon them." *S.C. Johnson*, 697 F.3d at 553.

Applying this standard to a 12(b)(6) motion, a court need only find that the challenged state law has "a 'significant impact' related to Congress's deregulatory and pre-emption-related objectives" for carriers' rates, routes, or services to warrant dismissal. *Dan's City*, 569 U.S. at 260. It is only "where the state action's effect on rates, routes, or services is tenuous, remote, or

peripheral" that preemption does not apply. *Kislov v. American Airlines, Inc.*, 2022 WL 846840, at *2, *7 (N.D. Ill. Mar. 22, 2022). The reasoning of Judge Pallmeyer in *Kislov* is instructive.

In *Kislov*, the plaintiffs alleged that an airline's customer service hotline violated BIPA through its use of voice recognition technology. *Id.* at *2. The airline argued that the BIPA claim was preempted because the hotline provided a "service" related to air travel and that the Airline Deregulation Act ("ADA")—like the FAAAA—regulated rates/prices, routes, and services to the exclusion of state law. *Id.* The court agreed with the airline, reasoning that "enforcement of the plaintiff's claims would impose some obligation on an airline-defendant with respect to conduct that, when properly undertaken, is a service." *Id.* Moreover, because the regulatory impact of BIPA on the airline's customer service hotline was so direct (BIPA would require the airline "to provide privacy protections that it does not wish to offer") the court held that no evidence of economic harm was needed to deem BIPA preempted. *Id.*

So too here. Per Plaintiff, Motive's technology "monitor[s] . . . truck drivers . . . for any signs of unsafe driving or . . . improper behavior" (such as whether a driver is "distracted, using a cellphone, or even [] yawning"), "continuously scan[s] . . . drives' facial geometry," and "begin[s] to scan" "[a]s soon as" drivers "begin driving." *Id.* ¶¶ 19, 21, 22, 28. Plaintiff alleges that BIPA applies to every driver whose purported biometric data is collected in Illinois or as soon as they cross the border into Illinois. *Id.* ¶¶ 22, 26, 28. Plaintiff thus alleges that the incorporation of this safety technology into Pure Freight's (and other carriers') services violates BIPA because Defendants did not first obtain BIPA-compliant consent from drivers. *Id.* ¶ 29. But carriers who use Motive's technology, like Pure Freight, employ drivers who cross state lines in their routes. *See supra* n.2; *see also Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc.*, 734 F.3d 296, 304 (4th Cir. 2013) (noting the inherently "interstate nature of the

trucking industry"). Thus, under Plaintiff's theory, motor carriers whose drivers cross state lines would be required to obtain BIPA-compliant consent from every driver, regardless of residency, just in case that driver passes through Illinois.

Complying with BIPA in this context would require significant alterations to nationwide business practices: purchasing and implementing alternative (and less effective) safety technologies, rerouting interstate deliveries (resulting in transportation delays), and adopting different hiring procedures to obtain BIPA consent from drivers (regardless of their residency). Some drivers would likely refuse to consent, which would interfere with the carrier's ability to achieve and maintain the federal government's minimum safety requirements and would subvert the federally constructed safety regime Congress has dictated. *See infra* § I.A.ii.

Just like the voice recognition technology used in *Kislov*, Motive's technology improves a feature related to a service. But in this case, the feature is not just convenience, but safety: A Motive-enabled carrier uses drivers who are more likely to reach their destination safely because those drivers are less likely to use a handheld device when driving and are more likely to be wearing a seat belt. BIPA's regulation of individual privacy therefore cannot be disentangled from Defendants' rates, routes, and services.

In addition, the "significant economic impact" BIPA would have on Defendants' rates, routes, and services is obvious. At minimum, enforcement of BIPA would: (i) increase Defendants' rates to account for BIPA-unique requirements; (ii) alter Pure Freight's (and others') routes to avoid travel through Illinois; and (iii) require nationwide compliance with BIPA's consent regime. Were BIPA deemed to apply, these costs would be unavoidable. *See Ye v. GlobalTranz Enters.*, 74 F.4th 453, 459 (7th Cir. 2023) (FAAAA preempted state law where state law would result in defendant "incurring new costs" and "changing their hiring processes").

ii.   **Plaintiff's claims are also preempted as they conflict with FMCSA regulations.**

Even where not expressly preempted, state law also cannot "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000). Thus, if a state law differs from federal law "in such a way that achievement of the congressional objective . . . is frustrated," it is impliedly preempted. *Aux Sable Liquid Prod. v. Murphy*, 526 F.3d 1028, 1036 (7th Cir. 2008) (finding state law preempted where it disrupted a uniform scheme created for "commercial motor vehicles"). This type of preemption—called "conflict preemption"—involves "examining the federal statute as a whole and identify[ing] its purpose and intended effects." *Crosby*, 530 U.S. at 373. That means "consider[ing] the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." *Frank Bros. v. Wis. DOT*, 409 F.3d 880, 894 (7th Cir. 2005). BIPA, as applied here pursuant to Plaintiff's theory, directly conflicts with the federal regulatory framework governing commercial vehicles. As such, it must be preempted.

Congress directed the Federal Motor Carrier Safety Administration ("FMCSA"), via the DOT, to "prescribe minimum safety standards for" commercial motor vehicles ("CMVs") to ensure that "the physical condition of operators of [CMVs] is adequate to enable them to operate the vehicles safely." 49 U.S.C. § 31136(a). Congress thus empowered the FMCSA to promulgate regulations that: (1) promote the safe operation of CMVs; (2) minimize dangers to the health of operators of CMVs and related employees; and (3) ensure increased compliance with traffic laws and with CMV safety and health regulations and standards. *See id.* § 31131(a)(1)-(3). Pursuant to those directives, the FMCSA has promulgated regulations requiring the use of seat belts (49 C.F.R. § 392.16) and prohibiting drivers from operating a CMV "while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other

cause, as to make it unsafe for him/her to begin or continue to operate" a CMV (*id.* § 392.3); while possessing, using, or under the influence of alcohol, drugs, and other substances (*id.* §§ 392.4, 392.5); or while texting or using a hand-held mobile telephone (*id.* §§ 392.80, 392.82). *See id.* § 177.804(a). Motive's products enable carriers like Pure Freight to comply with/monitor its drivers for compliance with these prohibitions, and federal law expressly recognizes the importance of permitting the use of such products: "vehicle safety technologies . . . that are mounted on the interior of a windshield" like Motive's products are specifically excluded from federal regulations otherwise limiting obstructions in the driver's field of view. 49 C.F.R. § 393.60(e). Thus, applying BIPA to Defendants would not only conflict with federal law, but the governing federal regulatory frameworks as well. Preemption is therefore required for this reason, too.

**B.**    **Plaintiff Fails to Plead Facts that Plausibly Establish Collection of "Biometric" Data Capable of Identifying Plaintiff.**

Even if not preempted, Plaintiff's BIPA claim fails to state a claim because the Complaint does not include plausible allegations establishing that Motive's technology collects "biometric" information.

BIPA regulates two types of data: "biometric identifiers" and "biometric information." 740 ILCS 14/15. To be a "biometric identifier," the captured information must be capable of "identify[ing] a person." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). The same is true for biometric information: BIPA defines "biometric information" as data "based on an individual's biometric identifier" that is "used to identify an individual." 740 ILCS 14/10. This makes sense: BIPA is focused on protecting Illinois residents' "interest" in "keep[ing]" their "personal *identifying* information ... secret." *West Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 58 (Ill. 2021) (emphasis added); *see also* 740 ILCS 14/5

(noting that an individual's "[b]iometrics are unlike other unique identifiers" because they cannot be changed, and thus if an individual's biometrics are compromised, the individual "is at a heightened risk for identity theft"). If a technology does not recognize an individual, it simply does not implicate a concern regulated by BIPA. Thus, where a plaintiff fails to plausibly allege that collected information is capable of *actually identifying* an individual, their claim must be dismissed. *See, e.g.*, *Martell v. X Corp.*, 2024 WL 3011353, at *3 (N.D. Ill. June 13, 2024) (noting that biometrics are "biologically unique to the individual" and dismissing BIPA claim for failing to meet this standard); *Daichendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022) (same).

Plaintiff's allegations are not enough. Plaintiff admits that Motive's cameras are used to "identify and record" "events," but nevertheless asks the Court to leap to the conclusion that identifying and recording events involves the use of biometrics. Plaintiff makes this ask via conclusory allegations that Motive's cameras "collect[] drivers' facial biometrics . . . us[ing] 'facial recognition,'" Compl. ¶ 20, and that "the only way" that Motive's cameras can identify and record events (such as the use of a cell phone) is to "continuously scan[] the drivers' facial geometry to determine the location of their eyes in relation to the rest of their facial features as well as the location of their mouth, nose, and ears to determine where they are looking and what they are doing." *Id.* ¶ 22. But these allegations do not meet the standard set forth in *Martell* for alleging that "facial geometry" was collected, *i.e.*, specific, plausible allegations that the defendant collected "unique" measurements of the shape or geometry of a particular person's face that are detailed enough to identify a "specific" individual. 2024 WL 3011353, at *3. Plaintiff's allegations fall short for two reasons.

First, Plaintiff's only real support for the assertion that this dashcam-enabled event monitoring process involves "facial recognition" is a single statement in a YouTube video by an employee of another company in another state—Jarrett Peltier, Senior Trainer of the Boston West Franchise of 1-800-GOT-JUNK?—that "the facial recognition makes it so we can just hop in the trucks and we're good to go." Compl. ¶ 20 n.2 (quoting https://www.youtube.com/watch?v=OYXASjLv5E0). But this statement arises in the context of explaining the process for logging into an app: "Before, we were spending, you know, anywhere [from] three to five minutes signing into an app." *Id.* In addition, the cited video is about the process for one customer outside of Illinois using a product different from the one present in Plaintiff's Pure Freight truck. The video does not plausibly suggest that Pure Freight was using the same Motive product in Illinois.

Second, Plaintiff's proposed inferential leap that "the only way" that Motive's cameras can identify and record events through the use of facial recognition is not plausible. The scanning of the interior of a vehicle cab with a camera does not plausibly suggest that Motive is collecting drivers' "biometrics"—in this case, the unique measurements of a person's facial features—under BIPA. All it suggests is that Motive's technology collects data about common, mutable driving *behavior*—a subject that BIPA does not regulate. *See Clarke v. Aveda Corp.*, 2023 WL 9119927, at *2 (N.D. Ill. Dec. 1, 2023) (dismissing claim as plaintiffs failed to plead the "most foundational aspect of a BIPA claim" that defendant "was capable of identifying individuals who used" the product). Indeed, the Complaint concedes as much. It alleges that Motive's technology "monitor[s] . . . truck drivers . . . for any signs of unsafe driving or . . . improper *behavior*," such as "whether" a driver is "distracted, using a cellphone, or even [] yawning." Compl. ¶¶ 19, 21 (emphasis added).

11

To state the obvious, just because a technology identifies a physical behavior does not mean that the technology is identifying the *individual* engaging in that behavior. The conduct alleged here stands in stark contrast with the collection of a fingerprint capable of identifying an individual associated with that fingerprint. Taken to its logical extreme, Plaintiff's position would justify applying BIPA to routine security technology like motion detectors—technology that detects physical behavior but without knowing *who specifically* engaged in the behavior. *See Martell*, 2024 WL 3011353, at *3 ("[I]f the Court were to read BIPA as applying to any retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry without those items actually identifying an individual, it would contravene the very purpose of BIPA."). Thus, because Plaintiff fails to allege that Defendants collected "biometric" information, the Complaint should be dismissed.

### C. Plaintiff Fails to Allege that Defendants "Collected" or "Stored" His Biometric Information

To state a claim under BIPA, a plaintiff must also plausibly allege that the defendant was involved in the "collection" or "storage" of biometric information or biometric identifiers. *See Kloss v. Acuant, Inc*., 462 F. Supp. 3d 873, 876-77 (N.D. Ill. 2020) (dismissing complaint under BIPA for failure to make such allegations, and noting that a plaintiff "may not merely parrot the statutory language of the claims that they are pleading, and must provide, at least, some specific facts to ground those legal claims"); *G.T. v. Samsung Elecs. Am. Inc*., --- F. Supp. 3d ---, 2024 WL 3520026, at *5-6 (N.D. Ill. July 24, 2024) (same, and adding that a plaintiff must allege that the defendants "gain[ed] control of Biometrics" and/or made "an affirmative effort . . . towards receiving the Biometrics"). Here, Plaintiff also fails to allege this critical element.

Plaintiff's allegations posit, repeatedly, that Pure Freight used Motive's technology to "monitor" drivers' performance using the subject cameras. Compl. ¶¶ 3-5, 17, 18, 23, 24, 27-28.

12

This monitoring included an "alert" that would be sent to Pure Freight if an "unsafe" driving event were detected. *Id*. ¶ 23. These factual allegations of "monitoring" drivers for distracted driving behaviors and receiving an "alert" are a far cry from the necessary factual allegations for a cause of action here. The Complaint includes no facts supporting the conclusory claim that Motive's "monitoring" technology *must have* "collected" or "stored" Plaintiff's "biometric information." And the remainder of Plaintiff's allegations merely recite the statutory requirements of BIPA. *e.g.*, *id*. ¶¶ 48-49, which are conclusions of law that should be disregarded. *See Kloss*, 462 F. Supp. 3d at 876-77.

Plaintiff does not allege *facts* concerning when, or where, his biometric information was allegedly collected; how Motive and Pure Freight allegedly "stored" or "collected" such biometric information; who owned Motive's cameras and how or when Pure Freight or Motive accessed data on these cameras; and/or how Motive's cameras collected Plaintiff's "facial geometry." Simply put, Plaintiff fails to plausibly allege that Defendants "collected" or "stored" any alleged biometric information. This is yet another reason to dismiss the Complaint.

## II.    At Minimum, The Court Should Preclude Plaintiff From Seeking Unauthorized and Excess Relief.

Alternatively, if the Court does not dismiss the Complaint in its entirety, the Court should dismiss Plaintiff's BIPA claim to the extent he seeks legally impermissible relief. *See, e.g.*, *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (affirming dismissal of complaint "to the extent that [plaintiff] seeks monetary damages . . . barred by" governing law); *Jones v. Circuit Court of Cook Cty.*, 2021 WL 4459510, at *3-4 (N.D. Ill. Sept. 29, 2021) (dismissing claims "to the extent" they sought "time-barred" or "preempted" damages relief).

Plaintiff appears to seek three such forms of impermissible relief here: (A) damages for each day his or a purported class member's biometrics were allegedly collected by the dashcam,

(B) injunctive relief, and (C) damages on behalf of non-Illinois residents. The Court should confirm that he cannot do so.

### A. Plaintiff Cannot Recover "Repeat Damages" Under BIPA.

Plaintiff purports to seek up to $5,000 in statutory damages for "every day" "that [he] drove a truck equipped with a Motive in-cabin monitoring system," allegedly in violation of Section 15(b). Compl. ¶¶ 26-27, 48. But the Illinois Legislature recently amended BIPA to clarify that BIPA bars such "repeat damages" claims: as of August 2, 2024, BIPA plaintiffs are "entitled to, at most, ***one recovery***" when the defendant "obtain[ed] the same . . . biometric information from the same person using the same method of collection in [alleged] violation of subsection (b) of Section 15[.]" 740 ILCS 14/20(b) (emphasis added) (the "Amendment"). Because Plaintiff alleges a singular, consistent "method of collection" on Defendants' part, the Amendment is applicable. *See* Compl. ¶¶ 24-28. And because the Amendment is retroactive, Plaintiff cannot recover repeat damages.

### i. The August 2024 amendment applies retroactively because the Legislature simply clarified existing law.

Under the "clarification" doctrine, an amendment applies retroactively if "the circumstances surrounding the amendment indicate that the legislature intended merely to interpret or clarify the original act." *Gregg v. Central Transport LLC*, --- F. Supp. 3d ---, 2024 WL 4766297, at *2 (N.D. Ill. Nov. 13, 2024). To determine whether an amendment was a "clarification of the prior statute," and thus retroactively applicable, courts consider "[i] whether the enacting body declared that it was clarifying a prior enactment; [ii] whether a conflict or ambiguity existed prior to the amendment; and [iii] whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history." *K. Miller Constr. Co. v. McGinnis*, 938 N.E.2d 471, 481 (Ill. 2010). It is also relevant if an "amendment [was] enacted

14

soon after controversies [arose] regarding the" statute because, in such circumstances, "it is logical and reasonable to regard the amendment as a legislative interpretation of the original statute," and not as an effort to change the original law. *Rubin v. Marshall Field & Co.*, 597 N.E.2d 688, 694 (Ill. App. 1992). "Generally, if the legislature passes an amendment contradicting a recent interpretation of a statute, it is an indication that such interpretation was incorrect and that the amendment was enacted to clarify the legislature's original intent." *Bailey & Asscs., Inc. v. Ill. Dep't of Emp. Sec.*, 638 N.W.2d 1204, 1211 (Ill. App. 1997).

As Judge Bucklo recently (and persuasively) held, almost all these circumstances apply to the Amendment. *See Gregg*, 2024 WL 4766297, at *3. **First**, a "conflict or ambiguity" plainly "existed prior to the" Amendment. *K. Miller*, 938 N.E.2d at 481. Before August 2024, courts vigorously debated whether a BIPA violation occurred "*each time* that a private entity allegedly collect[ed] or disclose[d] the individual's biometric data," and whether a plaintiff was accordingly entitled to damages for *each* violation of the Act. *Cothron v. White Castle Sys., Inc.*, No. 1:19-cv-382, Dkt. 141, at 1, 3 (N.D. Ill. Oct. 1, 2020) (Tharp, J.) (emphasis added) (citing cases). The statute's existing remedial provision, 740 ILCS 14/20, was simply unclear on this front. *See Cothron v. White Castle System, Inc.*, 20 F.4th 1156, 1162-65 (7th Cir. 2021) (recounting arguments from both sides). "[R]easonable minds . . . differed as to the clarity of BIPA's statutory text" on this issue. *Cothron*, No. 1:19-cv-382, Dkt. 141, at 3. And the question had grave "practical implications" because, "[i]f a new claim accrue[d] with each" violation, "violators face[d] potentially crippling financial liability": some business use "fingerprint scans" "frequently"—sometimes "multiple times per shift"—and BIPA "provides for statutory damages of $1,000 or $5,000 for 'each violation.'" *Cothron*, 20 F.4th at 1165. Thus, when the Seventh Circuit was confronted with this question in *Cothron*, it certified the question to the Illinois

Supreme Court. *Id*. at 1166-67. In so doing, the Seventh Circuit emphasized that the scope of BIPA's remedial provision presented "a close, recurring, and hotly disputed question of great legal and practical consequence." *Id*. at 1166 n.2.

On February 17, 2023, the Illinois Supreme Court issued a sharply divided decision holding that BIPA did not bar "repeat damages" as a matter of law. *See Cothron v. White Castle Sys., Inc*., 216 N.E.3d 918 (Ill. 2023). More specifically, the majority held, under "the plain language of the statute" "a separate claim *accrues* under the Act each time" a defendant violates Section 15(b). *Cothron*, 216 N.E.3d at 920, 924 (emphasis added). But the majority "expressly declined to decide" whether "plaintiffs are entitled to [statutory] *damages*" each time a violation accrued. *Gregg*, 2024 WL 4766297, at *3; *see Cothron*, 216 N.E.3d at 929 (suggesting that trial courts had "discretion to fashion a damage[s] award" under BIPA and noting that "there is no language in the Act suggesting legislative intent to authorize" excessive damages). As to that point, the majority concluded, the Legislature should "review the[] policy concerns" raised by White Castle and the dissent "and ***make clear its intent*** regarding the assessment of damages under the Act." *Id*. at 929 (emphasis added). *Cf. id*. at 929-30, 934-35 (Overstreet, J., dissenting, joined by Theis, C.J., and Holder White, J.) (emphasizing that the majority's accrual holding "cannot be reconciled with the plain language of the statute" and could result in "punitive, crippling" damages awards "that the legislature could not have intended"). The Legislature took up the majority's call and, less than a year after *Cothron*'s issuance, the Amendment barring "repeat damages" was introduced. *See infra* at 17-18 (further recounting legislative history).

As Judge Bucklo correctly observed, the upshot of the Illinois Supreme Court's holding was that "the question of BIPA *damages*," even if not accrual *per se*, "was at least ambiguous; if it were not, there would be no point in asking for legislative clarification." *Gregg*, 2024 WL

4766297, at *3 (emphasis added). And indeed, it is well established that "conflicting appellate decisions" preceding an amendment show that "there was no clear interpretation of the law to be changed." *K. Miller*, 938 N.E.2d at 482; *Rubin*, 597 N.E.2d at 532. The Legislature has now remedied that conflict and provided clarity on the unavailability of "repeat damages."

**Second**, for similar reasons, the Amendment was "consistent with a reasonable interpretation of the" original statute. *K. Miller*, 938 N.E.2d at 481. Indeed, the Amendment simply adopted a limitation on damages that three Illinois Supreme Court justices reasoned the statute had contained all along. *Compare* 740 ILCS 14/20(b)-(c) (limiting plaintiffs "to, at most, one recovery under the statute" when "the same . . . biometric information" is collected "from the same person using the same method of collection") *with Cothron*, 216 N.E.3d at 931, 935 (Overstreet, J., dissenting) (reasoning that "repeated scans of the same biometric identifier by the same entity" are not "repeated 'collections'" under the original statute, because there is "only *one* loss of control or privacy," which "happens when the information is first obtained"); *see also Cothron*, No. 1:19-cv-382, Dkt. 141, at 3 (citing other decisions holding likewise). No one can credibly argue that three Supreme Court justices' interpretation of a statute is unreasonable.

**Third**, the timing of the Amendment vis a vis the Supreme Court's decision further cements that the Amendment was simply a "legislative interpretation of the original statute," and not an attempt to change clearly established law. *Rubin*, 597 N.E.2d at 694. *Cothron* was issued on February 17, 2023. The Amendment was introduced a little less than a year later, on January 31, 2024. The bill's sponsor, Senator Cunningham, specifically cited *Cothron*, *i.e.*, the "case involving White Castle," as an impetus for the amendment,[3] and later stated that the Amendment

---

[3] Sen. Bill Cunningham, *Cunningham legislation reforms BIPA while protecting businesses and employees* (Jan. 31, 2024), available at https://senatorbillcunningham.com/news/491-cunningham-legislation-reforms-bipa-while-protecting-businesses-and-employees. The Court can take judicial notice

17

"adds *much needed clarity* that [will] help[] small businesses operate in a more predictable regulatory environment."[4] The Legislature passed the bill and the Governor signed it into law a few months later, on August 2, 2024. *See Gregg*, 2024 WL 4766297, at *1-2.

This is a textbook example of a legislative clarification. The decision of the court in *Wells Fargo Bank, N.A. v. Maka*, 2017 IL App (1st) 153010, is instructive. There, the court was asked to address the viability of the holding of another appellate court in *First Mortgage Company v. Dina*, 2014 IL App (2d) 130567, following a subsequent legislative amendment of the law at issue. *See Maka*, 2017 IL App (1st) 153010 ¶ 1. In *Dina*, the appellate court had held that a mortgage was "void" if the mortgagor "was not licensed pursuant to the License Act." *Id.* ¶ 6. "[J]ust a year" after *Dina* was decided, the Legislature amended the License Act to state that a "mortgage . . . shall ***not*** be held invalid solely on the basis of a violation under this Section." *Id.* ¶ 18 (quoting 205 ILCS 635/1-3(e)) (emphasis added). A few years later, in *Maka*, a homeowner-defendant attempted to apply *Dina*'s reasoning to a foreclosure that had preceded the amendment. The trial court rejected this argument, retroactively applied the amendment, and entered summary judgment in favor of the mortgagor-plaintiff. *Maka*, 2017 IL App (1st) 153010 ¶ 1.

The appellate court affirmed, pointing to two important facts. First, "*Dina* had been rendered just a year prior. No other precedential case law interpreting the Licensing Act had been issued." *Id.* ¶ 21. Second, one of the sponsors of the amendment characterized it as an effort "to clarify . . . a change that resulted from [*Dina*]." *Id.* ¶ 22. The court in *Maka* reasoned that these

---

of "matters of public records," including legislative materials. *See, e.g.*, *McBride v. McLean County*, 397 F. Supp. 3d 1198, 1206 (C.D. Ill. 2019).

[4] Sen. Bill Cunningham, *Updates to Illinois' biometric privacy signed into law thanks to Cunningham* (Aug. 2, 2024), available at https://senatorbillcunningham.com/news/508-updates-to-illinois-biometric-privacy-signed-into-law-thanks-to-cunningham.

facts showed that the amendment was "a clarification of the prior statute and must [therefore] be accepted as a legislative declaration of the meaning of the original provision in the Licensing Act." *Id*. ¶ 23.

*Maka* is not an outlier. Time and again, Illinois courts have found an amendment "clarifying," and thus retroactive, when it promptly follows "conflicting" court or agency rulings. *See, e.g.*, *K. Miller*, 938 N.E.2d at 299-301 (amendment was "clarifying" because it followed "conflicting appellate decisions" "as to the effect a violation of [a homeowner protection statute] had on the legal claims that could be pursued by a contractor"); *Bailey*, 683 N.E.2d at 1211-12 (amendment "was meant to correct" an agency's "interpretation" of an employment regulation "and was therefore a clarification"); *Rubin*, 597 N.E.2d at 531 (amendment to meaning of "deceptive act" under the Consumer Fraud Act was "clarifying" because it followed "conflict in the courts").

That is the exact circumstance here: a contested series of court rulings over an ambiguous statutory provision were promptly followed by a legislative "correct[ion]." *Bailey*, 683 N.E.2d at 1212. If anything, this case is even easier than these precedents because the Supreme Court majority **expressly invited** the Legislature to "make clear its intent regarding the" scope of the contested provision. *Cothron*, 216 N.E.3d at 929. As Judge Bucklo aptly noted, if the original statute was clear, "there would be no point in asking for legislative *clarification*." *Gregg*, 2024 WL 4766297, at *3 (emphasis added). *Cf. Garland v. Cargill*, 602 U.S. 406, 429 (2024) (Alito, J., concurring) (joining decision finding a statute unambiguous, but inviting Congress to "amend the law . . . [n]ow that the situation is clear").[5] Thus, the Amendment applies retroactively.

---

[5] *Schwartz v. Supply Network, Inc.*, 2024 WL 4871408 (N.D. Ill. Nov. 22, 2024) reached the opposite conclusion on this issue, but it is unpersuasive. The court held that because the *Cothron* majority found the "statutory language" with respect to *accrual* "clear" that *must* mean that the effect that holding had on *damages* was unambiguous and could not be clarified by the Legislature. *Id*. at *2-3. This fails to

ii. **The August 2024 amendment is also retroactive because it effected only a procedural change to BIPA's remedies provision.**

Under the "procedural change" doctrine, an amendment applies retroactively if it "relate[s] only to remedies or forms of procedure" under the statute. *Porgorzelska v. VanderCook College of Music*, 2024 WL 1578715, at *2-3 (N.D. Ill. Apr. 11, 2024). The Amendment was also a "procedural change" and thus "applies[s] retroactively" for that reason as well. *Perry v. Dep't of Fin. & Prof. Reg*., 106 N.E.3d 1016, 1027 (Ill. 2018). *Cf. Gregg*, 2024 WL 4766297, at *2 (declining to reach this question).

When the Legislature "has not expressly prescribed its intent as to the temporal reach of" an amendment, as is the case here, the Court must attempt to "discern the legislature's intent" as to whether the change was "procedural" (and thus applicable retroactively) or "substantive" (and thus applicable prospectively). *Perry*, 106 N.E.3d at 1033 "[A] substantive change in law establishes creates, defines, or regulates rights, and thus could actually make one a party to a suit." *GreenPoint Mortg. Funding, Inc. v. Poniewoznik*, 23 N.E.3d 525, 531 (Ill. App. 2014). "A procedural change," by contrast, "prescribes a method of enforcing rights[.]" *Id*. "Changes to remedies" that do not expand or curtail an underlying cause of action "are considered procedural under Illinois law." *Pogorzelska*, 2024 WL 1578715, at *3 (collecting cases); *accord Perry*, 106 N.E.3d at 1034 ("courts can apply retroactively statutory changes to procedural *or remedial* provisions").

Under this precedent, the Amendment is plainly procedural. As relevant here, the Amendment simply added two sub-sections clarifying the scope of BIPA's existing *remedies* provision, *see* 740 ILCS 14/20(b)-(c) (amended eff. Aug. 2, 2024), without otherwise affecting a

---

appreciate both the narrowness of the majority's opinion—which, again, expressly deferred to the Legislature on the damages issue, *see Gregg*, 2024 WL 4766297, at *3—and the history of conflicted rulings leading up to the decision. *Schwartz* also failed to address on-point precedent like *Mako*, *Bailey*, and *Rubin*.

person's *rights* under BIPA, *see* 740 ILCS 14/15 (unamended). The Amendment, in other words, "does not impact the accrual of BIPA claims," or whether a plaintiff *has* a cause of action under BIPA; it just affects the "recovery" a plaintiff can receive when a violation accrues. *Gregg*, 2024 WL 4766297, at *3. Because "[c]hanges to remedies are considered procedural under Illinois law," the Amendment applies retroactively. *Pogorzelska*, 2024 WL 1578715, at *3.

Judge Aspen's recent decision in *Pogorzelska* is on point. That case involved an amendment that "restored" plaintiffs' ability to recover "emotional distress damages" under Illinois state anti-discrimination law after a U.S. Supreme Court decision had held that such damages were not recoverable under federal anti-discrimination law. 2024 WL 1578715, at *1 (discussing *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022) and 775 ILCS 60/10, *i.e.*, the "Illinois Civil Rights Remedies Restoration Act" (eff. Jan. 1, 2024)). Although the amendment did not "clearly" say that it applied retroactively, Judge Aspen held that the amendment nonetheless *did* apply retroactively because it "merely expand[ed] available remedies without affecting the accrual of a claim" and thus was a "procedural" amendment. *Id*. at *2-3.

As support, Judge Aspen cited federal and state cases finding analogous amendments procedural. *See White v. Sunrise Healthcare Corp.*, 692 N.E.2d 1363, 1367-69 (Ill. App. Ct. 1998) (stating that "[a] change in the law that affects merely procedures or remedies will ordinarily be applied to existing rights of action" and determining that a statutory amendment eliminating "a species of punitive damages" fell on the "procedure" "side of the divide"); *Brandl v. Superior Air-Ground Ambulance Serv., Inc.*, 2012 WL 7763427, at *2 (N.D. Ill. Dec. 7, 2012) (applying Illinois law and holding that a statutory-damage provision added to state wage-payment statute was procedural and therefore retroactive).

Other Illinois law confirms this conclusion. Most notably, in *Dardeen v. Heartland Manor, Inc*., 710 N.E.2d 827 (Ill. 1999), the Illinois Supreme Court held that an amendment to the Nursing Home Care Act removing a treble-damages provision was "procedural" because the amendment "alter[ed] neither the substance nor the elements of a violation under the Act," and "pertain[ed] only to the remedies available to [a] plaintiff once [they] ha[ve] proved [their] cause of action." *Id*. at 832. Thus, "the amendment" must "be applied to pending claims arising under the Act." *Id*. at 833. This exact logic applies to the damage-limiting Amendment at issue here.[6]

### B. Plaintiff Cannot Seek Injunctive Relief Because He Does Not Allege Any Ongoing or Future Harm.

The Court should also dismiss Plaintiff's request for forward-looking injunctive relief. *See* Compl. ¶ 43, Prayer for Relief (conclusory references to "injunctive and equitable relief"). It is settled law that "prospective injunctive relief" cannot be established on "a past injury alone." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). In seeking prospective injunctive relief, a plaintiff must "face[] a real and immediate threat of future injury." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019). Thus, *former* employees "lack standing to pursue prospective declaratory and injunctive relief related to the employer's practices if they are no longer in danger of future harm from such practices." *Williams v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 5748421, at *3-4 (N.D. Ill. Sept. 6, 2023).

---

[6] *Schwartz* reached a different conclusion on this point, too, but, again, it is unpersuasive. The court reasoned that the Amendment was "substantive" because it purportedly "redefine[d] what constitutes a violation of the Act in the first place." 2024 WL 4871408, at *4. As Judge Bucklo explained, that is not correct: the Amendment only amended the remedies provision of BIPA, not the provision setting forth when, or under what circumstances, a violation accrues. *See Gregg*, 2024 WL 4766297, at *3. That the Amendment limits the value of a BIPA claim does not mean that the Amendment is not, at bottom, a change to a "remedial" provision. And governing Illinois Supreme Court precedent holds that "courts can apply retroactively statutory changes to . . . *remedial* provisions." *Perry*, 106 N.E.3d at 1034 (emphasis added); *see Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011) ("The highest court of each State, of course, remains the final arbiter of what is state law.").

Here, Plaintiff alleges that he "work*ed* as a truck driver for Pure Freight in 2023," and that "*[d]uring his time* as a truck driver," Defendants violated Plaintiff's BIPA rights. Compl. ¶¶ 26-29 (emphasis added). Plaintiff does not allege that he *currently* works as a truck driver for Pure Freight or any other trucking company using Motive's technology. Nor does Plaintiff allege that Pure Freight currently uses Motive's technology. Plaintiff has thus failed to allege that he "faces a real and immediate threat of future injury," *Carello*, 930 F.3d at 833, and accordingly cannot seek injunctive or declaratory relief. *See, e.g.*, *Williams v. JRN, Inc*., 2024 WL 2846481, at *1, 7-8 (S.D. Ill. June 5, 2024) (dismissing BIPA plaintiff's request for "injunctive relief" on this basis).

### C.  Plaintiff Cannot Represent a Class That Includes Non-Illinois Residents.

Finally, the Court should dismiss Plaintiff's claim to the extent he seeks to include *non*-Illinois residents within his putative BIPA class. BIPA, like most Illinois statutes, "does not apply extraterritorially." *Sloan v. Anker Innovations Ltd*., 711 F. Supp. 3d 946, 959 (N.D. Ill. 2024). "As such, plaintiffs' ability to state a claim under BIPA depends on whether 'the circumstances that relate to the disputed transaction occur[ed] primarily and substantially in Illinois.'" *Campana v. Nuance Comms., Inc*., 2024 WL 2809838, at *2 (N.D. Ill. Mar. 8, 2024) (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005)). If the alleged BIPA violations did not occur "primarily and substantially in Illinois," then the claim seeks to apply BIPA extraterritorially and cannot be maintained. *Id*.; *Sloan*, 711 F. Supp. 3d at 959-60.

In conducting this inquiry, courts often focus on the plaintiffs' residency and whether "the disputed transactions . . . occurred" in Illinois. *Avery*, 835 N.E.2d at 854. This makes good sense with respect to BIPA. "The General Assembly enacted BIPA to protect *Illinois residents'* highly sensitive biometric information . . . ." *In re Clearview AI, Inc., Consumer Privacy Litig*., 585 F. Supp. 3d 1111, 1121-22 (N.D. Ill. 2022) (emphasis added).

Thus, if a plaintiff seeks to include non-Illinois residents within their putative BIPA class, courts will dismiss claims brought on those individuals' behalf. In *Sloan*, for example, Judge Ellis dismissed BIPA class claims asserted on behalf of "non-Illinois residents" at the pleadings stage, because those plaintiffs suffered the "alleged harm" under BIPA—"access to their [biometric] data without their consent"—in their "state of residency." *Sloan*, 711 F. Supp. 3d at 959; *see also Daly v. Glanbia Performance Nutrition, Inc*., 2023 WL 5647232, at *2-3 (N.D. Ill. Aug. 31, 2023) (same reasoning and result with respect to Consumer Fraud Act claims brought on behalf of non-Illinois residents).

Here, Plaintiff seeks to represent a putative class of "all individuals who were employed as drivers in Illinois during the relevant statute of limitations who were subject to [Motive's] in-cabin monitoring system within the State of Illinois." Compl. ¶ 36. On its face, this definition is unclear as to whether it encompasses non-Illinois residents and/or conduct outside of Illinois. What does it mean for a class member to have been "employed as [a] driver[] in Illinois"? Does that mean that the class member must have been employed as a truck driver *while residing* in Illinois? Or does it mean that the class member simply was employed as a truck driver *while driving through* Illinois?

If Plaintiff's class is limited to truck drivers who reside (and drive) in Illinois, that does not pose a facial extraterritoriality problem (though discovery may reveal other extraterritoriality problems and class certification will be impermissible in any event).

But if Plaintiff's class includes *non*-Illinois residents simply driving through Illinois en route to *other* states, *e.g*., a driver who lives in Indianapolis and drives through Illinois en route to Minneapolis, then Plaintiff seeks to apply BIPA extraterritorially. Why? Because the alleged BIPA violation—namely, the failure to obtain a driver's consent to use of Motive's

technology[7]—would have occurred *outside* Illinois, before the driver entered the state, and the "damage" to drivers, "if any," would have occurred *outside* Illinois as well, in whatever state the driver resides. *Avery*, 835 N.E.2d at 854; *see also* Compl. ¶ 28 (alleging that "Motive's camera[s] . . . begin to scan" "[a]s soon as" drivers "begin driving"). Nor does Illinois have any inherent interest in regulating Motive. As noted at the outset, Motive is a California company with no connections to Illinois other than its work with interstate operators like Pure Freight. *See supra* Background.

Accordingly, to the extent Plaintiff seeks to apply BIPA extraterritorially on behalf of a putative class, the Court should preclude him from doing so, including by requiring Plaintiff to "amend" his class definition "to eliminate allegations about" non-Illinois residents. Fed. R. Civ. P. 23(d)(1)(D); *accord Sloan*, 711 F. Supp. 3d at 959-60; *Daly*, 2023 WL 5647232, at *2-3.

## CONCLUSION

Motive respectfully requests that the Court dismiss the Complaint with prejudice or, alternatively, limit the scope of Plaintiff's claims as detailed above.

---

[7] Motive does not concede, and expressly contests, that any consent is needed.

Dated: January 21, 2025[8]

Respectfully Submitted,

*/s/ Justin O. Kay*

Justin O. Kay (ARDC 6286557)
Ambria D. Mahomes (ARDC 6334463)
**FAEGRE DRINKER BIDDLE &
REATH LLP**
320 South Canal Street, Suite 3300
Chicago, Illinois 60606-5707
Telephone: 312-569-1000
Facsimile: 312-569-3000
justin.kay@faegredrinker.com
ambria.mahomes@faegredrinker.com

Paul A. Rosenthal
**FAEGRE DRINKER BIDDLE &
REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
Telephone: 973-549-7000
Facsimile: 973-360-9831
paul.rosenthal@faegredrinker.com

Anderson Tuggle
(*pro hac vice forthcoming*)
**FAEGRE DRINKER BIDDLE &
REATH LLP**
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone: 612-766-7000
Facsimile: 612-766-1600
anderson.tuggle@faegredrinker.com

*Counsel for Defendant Motive Technologies,
Inc.*

---

[8] Although the parties stipulated, and the Court so ordered, this motion to be filed by January 20, 2025 (ECF 14-15), the motion is being filed on January 21, 2025, because January 20 was a legal holiday, *i.e.*, Martin Luther King Jr.'s Birthday. *See* Fed. R. Civ. P. 6(a)(1), (6) (stating that "if the last day" to file under a court-ordered deadline is a "legal holiday, the period continues to run until the end of the next day that is not a . . . legal holiday"; defining "legal holiday" to include "Martin Luther King Jr.'s Birthday").

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this 21st of January, 2025, a true and correct copy of the foregoing was filed and served via the ECF/CM system with the Clerk of the Court and which will serve Notice of Electronic Filing upon counsel of record via electronic mail.

*/s/ Justin O. Kay*
Justin O. Kay
